**OPP**
**PATRICK W. KANG, ESQ.**
State Bar No.: 010381
**KYLE R. TATUM, ESQ.**
State Bar No.: 013264
**KANG & ASSOCIATES, PLLC**
6480 W. Spring Mountain Rd., Ste. 1
Las Vegas, NV 89146
P: 702.333.4223
F: 702.507.1468

*Attorneys for Plaintiff*
*Eddy Chinchilla*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| EDDY CHINCHILLA, an Individual, | ) |
| Plaintiff/Petitioner, | ) Case No.: 2:13-cv-01000-GMN-NJK |
| vs. | ) |
| BELLAGIO, LLC, d/b/a BELLAGIO HOTEL RESORT AND CASINO, As The Employer; and CULINARY WORKERS UNION, LOCAL 226, | ) **PLAINTIFF'S OPPOSITION TO DEFENDANT BELLAGIO'S MOTION TO DISMISS** |
| Defendants/Respondent. | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT BELLAGIO'S MOTION TO DISMISS**

COMES NOW, Plaintiff, EDDY CHINCHILLA, by and through his attorneys of record, PATRICK W. KANG, ESQ., and KYLE R. TATUM, ESQ., of the law firm KANG & ASSOCIATES and hereby submits his Opposition to Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)6.

…

~ 1 ~

This Opposition to the Defendant's Motion to Dismiss is made based upon the attached points and authorities, paper, and pleadings on file herein, as well as any oral argument deemed necessary.

DATED  10    day, April, 2014.

                                      **KANG & ASSOCIATES**

                                        /s/ Patrick W. Kang
By: _____

**Patrick W. Kang, Esq.**
State Bar No.: 010381
**Kyle R. Tatum, Esq.**
State Bar No.: 013264
6480 W. Spring Mountain Rd., Ste. 1
Las Vegas, NV 89146
*Attorneys for Plaintiff*

…

…

…

…

…

## POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION

### I.
### INTRODUCTION

Through this motion, Plaintiff opposes Defendant's Motion to Dismiss pursuant to the Federal Rules of Civil Procedure. In the instant matter, the grant of a dismissal in favor of the Defendant is improper. Defendants contend, among other things, that Plaintiff failed to allege facts sufficient to state a claim for relief for breach of a collective bargaining agreement; violation of the fair duty of representation; and failure to follow Federal Rule of Civil Procedure 8. This Opposition to the Defendant's Motion to Dismiss will provide both facts and legal argument that support Plaintiff's contention that sufficient facts have been alleged to state a claim for relief. Therefore, Plaintiff is entitled to relief from the Defendants, and this Court should deny Defendant's Motion to Dismiss in its entirety.

### II.
### FACTUAL BACKGROUND

Plaintiff had worked with Bellagio since it first opened in 1998 as a food server in Café Bellagio. The Café is a 24 hour restaurant catering to the upscale clientele of this five diamond, four star hotel. At night, there are staggered worker's shifts in the Café to maintain an adequate level of staffing during peak periods; one such peak is between approximately 12:30 and 1:00 AM, during which one of the stage shows lets out.

On the night of September 6-7, Plaintiff worked from 6:00 PM to 2:00 AM. During this late night rush, Café assistant manager Elizabeth Giacomaro seated three tables in Plaintiff's section at the same time, as well as seating a table in a closed section. Contrary to the standard practice of not seating guests outside of an assigned station, Ms. Giacomaro did not ask the Plaintiff first or else come over and let him know about the extra table.

When Plaintiff approached Ms. Giacomaro and asked who was going to serve this table, she told Plaintiff that he would. Plaintiff responded that he would take care of his other tables first, and then walked away. Plaintiff did not yell or raise his voice, and witnesses testified that he used only a "stern" tone. Frustrated with being served multiple tables simultaneously, Plaintiff informed Ms. Giacomaro that he would file a grievance with the Culinary Union against her the next day.

Ms. Giacomaro approached Plaintiff about the earlier incident as his shift was ending and requested that Plaintiff talk with her in her office. Plaintiff responded that his shift was over and that he was going home. Plaintiff testified that Ms. Giacomaro never threatened discipline if he did not meet with her. This night's events are the basis for Bellagio's decision to terminate Plaintiff due to "insubordination."

Ana Marie Mormando began as Bellagio's vice president of food and beverage in August 2007, approximately a month before the above-described incident. After the incident, Ms. Mormando reviewed Plaintiff's file and all of the reports and statements related to the incident. She concluded that Plaintiff had been insubordinate based on Ms. Giacomaro's account that Plaintiff "refused" to pick up the table and "refused" to meet with management to discuss the incident. Based on these conclusions, Plaintiff was terminated.

In an initial arbitration meeting challenging Plaintiff's wrongful termination on June 8, 2009, the Arbitrator stated that receipt records and other employee witnesses generally supported the credibility of Plaintiff's testimony. He also stated that Ms. Giacomaro assigning several tables in succession to Plaintiff while failing to inform him of the table in a closed section provided justification for a certain amount of frustration on his part. While Plaintiff's decision to not immediately meet with the management at the end of his shift exhibited a degree of defiance, he did not disobey a clear work-related order. Therefore, the Arbitrator reduced Plaintiff's termination to a five day suspension.

After concluding that Plaintiff's termination was not for just cause, the Arbitrator remanded to the parties a calculation of the amount owed to Plaintiff, with the Arbitrator retaining jurisdiction in the event that they cannot agree.

Plaintiff was out of work for nearly 20 months and was unable to obtain other employment. He engaged in alternative efforts to support his family, including obtaining unemployment benefits, and attempting to reinvest funds from the sale of a property to gain new income. He also applied for work, but was ultimately unsuccessful in his attempts. In a second Arbitration decision dated February 22, 2012 to determine the amount of Plaintiff's back pay, because Plaintiff allegedly failed to adequately use the Union hiring hall and because the Arbitrator believed his list of employers lacked credibility, Plaintiff was denied any and all back pay. This decision was reached nearly after the same Arbitrator earlier concluded that Plaintiff was wrongfully terminated.

~ 4 ~

Throughout the grievance and arbitration process Mr. Chinchilla was not notified of what steps were taking place and what to expect while waiting for a resolution. He frequently went to the Union offices and requested assistance and updates on what was happening. During a very stressful 20 month period of unemployment Mr. Chinchilla felt abandoned by the Union that he had zealously worked for during his time with the Bellagio.

Finally, when his second arbitration date came, the Union attorney that represented Mr. Chinchilla failed to adequately articulate nearly all of his efforts to maintain and support his family. One of the most significant arguments that the Bellagio stated in the second arbitration was Mr. Chinchilla's failure to produce job applications. However, nearly every time Mr. Chinchilla was asked why he was terminated from his last position, he had to answer honestly that he was terminated for insubordination. Mr. Chinchilla was out looking for work in the hotel and restaurant industry during one of the worst recessions in American history, and he was doing so with the insubordination label on his record. Mr. Chinchilla would frequently attempt to apply for work and would be refused an application, or if he filled out a "paper application," it is not only plausible, but likely, that as soon as the manager saw "insubordination" on the application it could be thrown away.

It would be nearly impossible to keep copies of every application where Mr. Chinchilla applied. He would search for work every week, and as was very common from the end of 2007-2009, he would be met with the response that the location was not currently hiring. The attorneys for the Bellagio presented an expert witness who presented statistics for how long it should have taken Mr. Chinchilla to find a job, focusing largely on prerecession figures. During the whole proceeding, Mr. Chinchilla's attorney did little to show the weakness of the expert's statements, only asking few questions, none of which helped defend Mr. Chinchilla against the expert's frail analysis.

She also did nothing to present Mr. Chinchilla's efforts to find work during his period of unemployment. This likely occurred because of how little time she or any other Union employee actually spent assisting Mr. Chinchilla on his case. No statements were made about how Mr. Chinchilla was frequently refused applications when he would go, in person, to apply to various restaurants, hotels and casinos. Additionally, Mr. Chinchilla had sold property shortly before he was terminated, and he attempted to reinvest the funds in an effort to support himself and his family during the period of unemployment. No mention was made by his attorney of that effort.

Additionally, it was clear from the record of the arbitration that Mr. Chinchilla had engaged in at least some effort to find work. Evidence was presented, even by opposing counsel, that Mr. Chinchilla had in fact applied to at least some positions online, and there were records of his attempts in doing so. Still, even with this evidence the arbitrator made the decision to award Mr. Chinchilla no back pay. It may have been reasonable to reduce the award given the weak representation by Mr. Chinchilla's counsel, but to award no back pay, even with evidence on the record that he had attempted to mitigate damages, was completely ill-founded.

Despite the inadequate representation and the ruling, Mr. Chinchilla's Union appointed attorney gave him no advice on options to appeal or vacate the arbitrator's ruling. Thus, Plaintiff brings the foregoing Opposition to Defendant's Motion to Dismiss.  Therefore, this Court should preclude Defendant's alleged entitlement to a dismissal of the Complaint, or in the alternative grant Plaintiff leave to amend said Complaint.

### III.
### STANDARD FOR MOTION TO DISMISS

"The standard of review for a dismissal under [12(b)6] is rigorous as [the] court must construe the pleading liberally and draw every fair intendment in favor of the non-moving party." _Vacation Village, Inc. v. Hitachi America, Ltd._, 874 P.2d 744, 746 (Nev. 1994). Further, the Nevada Supreme Court noted, "all factual allegations of the complaint must be accepted as true." _Id_.  Most importantly, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle him to relief." _De La Cruz v. Tormey_, 528 F.2d 45, 48 (C.A. 9(Cal.)1978) (citing _Conley v. Gibson_, 355 U.S. 41, 45-46, 78 (1957)).  However, this Court denial of Defendant's request for a dismissal is proper because Plaintiff "[is] entitled to proceed beyond the threshold in attempting to establish [his] claims." _Id._  When viewing the allegations of the complaint in the Plaintiff's favor, Plaintiff has satisfied the requirement to preclude Defendant's Motion to Dismiss.

Moreover, "the primary objective of the law is to obtain a determination of the merits of any claim; and that a case should be tried on the proofs rather than the pleadings." _Rennie &Laughlin, Inc. v. Chrysler Corp._, 242 F.2d 208, 213 (C.A. 9 (Cal.) 1957). In the instant matter, the Defendant has not answered, parties have made no adequate exchanges, no discovery procedures done, or any other motions and pleadings, and therefore a dismissal solely based

on the complaint is inappropriate in this instance. Here, "[a dismissal] cannot take the place of submission of evidence and findings of fact and conclusions of law." *Id*. Plaintiff negated filing unmeritorious claims. Plaintiff attests that the instant matter contains "allegations [that] give fair notice to the nature and basis of a legally sufficient claim and the relief requested." <u>*Vacation Village, Inc. v. Hitachi America, Ltd.*</u>, *874 P.2d 744, 746 (Nev. 1994)*. Plaintiff is confident that the allegations articulated in his Complaint "if accepted by the trier of fact would entitle [him] to relief." *Id*. Therefore, a preclusion of the dismissal which the Defendant seeks is warranted.

### IV.
### LAW AND ARGUMENTS

**1. THE FAILURE TO COMPLY WITH A JURISDICTIONAL STATEMENT IS NOT CAUSE TO DISMISS A CASE.**

While the amended complaint did not adequately state a complete jurisdictional statement, jurisdiction has been established in this case from earlier filings. The complaint was initially brought in state court and removed pursuant to Co-Defendant Culinary Workers' Union's request. The removal was granted. This amended complaint only seeks to modify the original complaint, where jurisdiction was adequately and appropriately provided.

Jurisdiction was established in this case pursuant to Co-Defendant Culinary Workers' Union's motion for removal. Federal Question jurisdiction under 28 U.S.C. Sec. 1331 and 29 U.S.C. Sec. 185(a) over what are now the First and Second Causes of Action were argued by Co-Defendant in the original request for removal. As the Defendant stated, "[these] Causes of Action arise under federal law, and are removable under 28 U.S.C. Sec. 1441(a) and (b). *See Harper v. San Diego Transit Corp.*, 764 F.2d 663, 667 (9th Cir. 1985)." Additionally, venue is proper in the United States District Court for the District of Nevada because this action was brought in the District Court for Clark County, Nevada.

There is no good cause to dismiss the complaint since jurisdiction has already been shown. Additionally, Plaintiff's counsel apologizes to the Court and will appropriately provide a supplemental jurisdictional statement that allows this case to continue in this Court.

…

**2. MR. CHINCHILLA HAS STATED A VALID CLAIM FOR VIOLATION OF THE DUTY OF FAIR REPRESENTATION; REPRESENTATION WAS INADEQUATE WHICH ROSE TO A LEVEL OF REPRESENTATION THAT WAS "ARBITRARY, DISCRIMINATORY OR BAD FAITH."**

Mr. Chinchilla's claims do not lack a basis for claiming relief under federal law. As the Defendant has stated, Mr. Chinchilla must show that there was a violation of the collective bargaining agreement, and a breach of a fair duty of representation. (Defendant's Motion Pg. 7).

There is no question that a violation of a breach of the collective bargaining agreement was established. The grievance process ultimately concluded that Mr. Chinchilla's conduct should not have resulted in termination. Due to this violation of the CBA, it was ordered that he be reinstated, with seniority and back pay. **(DEFENDANT'S EXHIBIT 1 Pg. 17).**

Co-Defendant Culinary Workers' Union has a duty to fairly represent employees for whom it is the collective bargaining representative. *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). "A union breaches its duty of fair representation only when its conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985). The Defendant's argument that a Plaintiff does not have standing to challenge an arbitration proceeding is invalid as it only applies if the Union did not breach its duty of fair representation. This type of violation is established in Mr. Chinchilla's case as the complaint clearly states facts sufficient to demonstrate a breach of the Union's Duty of Fair Representation.

Arbitrary is defined as a decision "depending on individual discretion… founded on prejudice or preference rather than on reason or fact." ARBITRARY, Black's Law Dictionary (9th ed. 2009). Furthermore, while a complete definition or list of examples of bad faith is impossible, the following types are among those which have been recognized in judicial decisions: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Restatement (Second) of Contracts § 205 cmt. d (1979).

In this case, Plaintiff has sufficiently pled facts which demonstrate a violation of Defendant's duty of fair representation. Specifically, the complaint alleges that the Union failed to dutifully represent the client in his grievance process and arbitration. Additionally, the Union's failure to adequately come to any agreement with the Bellagio regarding back pay is a consequence of the Union's failure to represent Mr. Chinchilla fairly and in good faith. The fact

that Mr. Chinchilla was initially awarded back pay totaling nearly $95,000 and the Union could not obtain a single penny, despite evidence he mitigated his damages, shows an utter disregard for the concerns of their Union member which in and of itself could qualify as arbitrary, discriminatory and in bad faith.

The Defendant states that Mr. Chinchilla does not allege sufficient facts to establish that their handling of the second arbitration was arbitrary, discriminatory or in bad faith, however that claim is false. Paragraphs 19-25 of Mr. Chinchilla's amended complaint state that evidence was not submitted by the Union during the second arbitration proceeding. The transcript of the arbitration further evidences the Union's complete failure to advocate effectively on behalf of Mr. Chinchilla in a number of ways. 1) The fact that Mr. Chinchilla had a mark of insubordination was not properly pointed out by the Union. 2) The efforts that Mr. Chinchilla engaged in to invest money were not explained. 3) Little was done to explain Mr. Chinchilla's efforts to obtain employment via in person application. 4) Not only did his Union appointed attorney not point out and emphasize Mr. Chinchilla's job search efforts, they failed to mention the trouble he would have finding work with a mark of insubordination on his record during one of the deepest recessions in American history. **(EXHIBIT 1, 2nd Arbitration Transcript)**. These shortcomings demonstrate a complete neglect for a client that had been pushed aside for almost two years.

The Sixth Circuit in *Ruzicka v. General Motors Corp.,* 523 F.2d 306 (6th Cir. 1975), found a union's grossly negligent failure to process a grievance in a timely fashion, to be arbitrary. Such "handling of the grievance", the court said, "unrelated as it was to the merits of appellant's case, amounts to unfair representation. It is a clear example of arbitrary and perfunctory handling of a grievance." *Id.* at 310. The Ninth Circuit quoted this reasoning in *Robesky v. Qantas Empire Airways Ltd.*, 573 F. 2d 1082, 1090 - Court of Appeals, 9th Circuit 1978. It went further and stated "it is clear that unintentional acts or omissions by union officials may be arbitrary if they reflect reckless disregard for the rights of the individual employee, they severely prejudice the injured employee, and the policies underlying the duty of fair representation would not be served by shielding the union from liability in the circumstances of the particular case." *Id. internal citations omitted*.

The Union's failure to assert a relevant argument to the arbitrator cannot simply be represented to this court as a strategy in how they decided to handle a claim. Instead, as Mr. Chinchilla has repeatedly stated, he was ignored, pushed aside, and neglected by the very

Union that he had zealously served for nearly a decade. The final arbitration was not a result of strategic decisions on which witnesses to call, and what evidence to present; it was a complete embarrassment for Mr. Chinchilla. His attorney clearly evidenced a lack of preparation and understanding of what Mr. Chinchilla had done during the years of wrongful unemployment.

There is a significant dispute that the Defendant fails to either understand or acknowledge in its motion to dismiss. The complaint does not assert one day of neglect. Mr. Chinchilla spend two years emailing, calling, meeting with Union employees and requesting assistance. **(EXHIBIT 2).** Prior to the second arbitration, Mr. Chinchilla even engaged this law firm to assist in the correspondence between himself and the Union because he felt like he was having trouble being heard. The email correspondence demonstrate his feelings of abandonment as his Union failed to timely and adequately assist him through his grievance process.

The Union's efforts to represent Mr. Chinchilla do not simply stop at checking off the steps that are outlined in the collective bargaining agreement. "The duty of fair representation is . . . akin to the duty owed by other fiduciaries to their beneficiaries. For example, some Members of the Court have analogized the duty a union owes to the employees it represents to the duty a trustee owes to trust beneficiaries. Others have likened the relationship between union and employee to that between attorney and client." *Air Line Pilots Ass'n v. O'neill*, 499 US 65, 74-75 - Supreme Court 1991 (*internal citations omitted*). The Union attorney did little to assist its member in obtaining a favorable resolution. It took far too long for the reinstatement of Mr. Chinchilla to occur after his wrongful termination, and too long for the proceedings to go to a final arbitration. In the end, the Union appeared to give up on Mr. Chinchilla by failing to adequately represent him and allowing the Arbitrator to come to the conclusion that after 20 months of stress, financial hardship, months of searching and seeking employment, and other efforts to support himself and his family, that his efforts amounted to nothing. **(DEFENDANT'S EXHIBIT 2 Pg. 13)**.

The arbitrator ruled that Mr. Chinchilla would not be eligible for any of his nearly one-hundred thousand dollars in lost wages. Mr. Chinchilla apparently deserved no compensation for every single day he left his house to find work, for every time that he submitted an application, and for every effort to invest his savings. This only occurred because the Union was woefully unprepared to advocate for Mr. Chinchilla in the second arbitration. Not only was the decision unfair and wrong, the conclusion could only have logically been made by an impartial

arbitrator after counsel failed to state anything that Mr. Chinchilla did to improve his situation and mitigate his damages. This type of representation was not a failed strategic decision; it was a result of neglectful representation of a client who deserved better. He deserved more time from his Union, more attention when he filed his grievance, and more assistance while the grievance was "processed" for 20 months.

In the case relied upon by the Co-Defendant, the Union pointed to *Slevira v. Western Sugar Co.*, That opinion gave a two part test that must be met in order to determine that the Union did not act in an arbitrary manner. In considering whether the Union acted arbitrarily by failing to consider a presumably meritorious argument, it stated: "we consider whether the union: (1) has deliberated the alleged meritorious argument, and (2) can provide an explanation for its decision not to pursue the argument." 200 F.3d 1218 (9th Cir. 2000). (internal citations omitted.) See *Patterson v. International Bhd. of Teamsters, Local 959*, 121 F.3d 1345, 1349 (9th Cir. 1997). The Defendant simply relies on the argument that the can do basically whatever it wants, and the Court does not have power to second guess its decision. That argument is contrary to the reasoning that was outlined in the very cases cited in the Union's motion to dismiss.

What happened at the second arbitration was not an impartial hearing; it was a circus, where Mr. Chinchilla felt strongly that he was made a clown. It is clear that his Union was woefully unprepared for the proceedings by the complete lack of adequate representation. "Arbitrary, discriminatory, or in bad faith" are all accurate descriptions of how Mr. Chinchilla was treated. This was not one or two simple mistakes, it was complete neglect and failure by a Union in defending its member, which does indeed rise to a level of arbitrary representation.

Therefore, we respectfully request this Court deny Defendant's Motion to Dismiss on the basis that the Union's representation was in fact so poor that it rises to a level of arbitrary, representation.

**3. THE DEFENDANT INCORRECTLY CHARACTERIZES WHERE IT'S BREACH OF DUTY OF FAIR REPRESENTATION TOOK PLACE.**

The Defendant seeks to limit the scope and analysis of the duty that was owed to Mr. Chinchilla during the course of his representation. Both the Union and the Bellagio discuss and analyze numerous cases that argue that the Union had no duty to vacate the arbitration award

or advise Mr. Chinchilla of his appeal options. This is a fundamental misunderstanding of when and how the Union breached its duty to Mr. Chinchilla.

The Union breached its duty of fair representation throughout his grievance process. As stated in Mr. Chinchilla's complaint, the Union failed to: 1) timely assist and advise Mr. Chinchilla of the steps that were being taken in his grievance. 2) It failed to properly advise and prepare him for arbitration. 3) It failed to timely bring the matter before an arbitrator resulting in exacerbated damages to Mr. Chinchilla's economic circumstances. 4) It failed to meet with and prepare Mr. Chinchilla for his second arbitration. And 5) It failed to gather information that would have been appropriate and necessary for a defense against the employer, the Bellagio. After breaching its duty in all of these instances, and losing Mr. Chinchilla's second arbitration, it then 6) failed to advise him of how to proceed to vacate the arbitration award or go forward with appropriate judicial remedies.

The Union did not simply make one or two mistakes at arbitration. It was not a brief lapse in judgment or a missed opportunity during a cross examination. It established a pattern of complete neglect for not just a Union member, but one of their shop stewards. They did not take any substantive steps to prepare Mr. Chinchilla, nor did they have any meaningful meeting with him to gather important information that would be relevant to his case. He sustained significant economic and emotional damages, and at the end, their neglect led to his loss of nearly all the wages that he was owed for his wrongful termination.

The failure of the Union attorney to properly represent Mr. Chinchilla, which culminated in its failure to pursue an effective claim for its member, resulted in losses totaling nearly $100,000. While it may be a nominal amount of money for the Union, not worth their time or effort to recover, that amount represented a significant percentage of Mr. Chinchilla's livelihood that could have helped him recover from the debt and losses he had accrued during his lengthy and wrongful period of unemployment.

4. **CHINCHILLA'S CLAIMS FOR A BREACH OF DUTY OF FAIR REPRESENTATION ARE NOT BARRED WHEN APPLYING THE APPROPRIATE STATUTE OF LIMITATIONS.**

The Defendant again seeks to misdirect the court by incorrectly citing the analysis and rule of the Supreme Court case *DelCostello v. Teamsters*, 462 U.S. 151 (1983). The Defendant states that the rule in the case is that the statute of limitation for suits against a union alleging that the union breached its duty of fair representation is six months. (Defendant's Motion Pg.

14). However, in that case the Supreme Court stated it is the courts "task [] to "borrow" the most suitable statute or other rule of timeliness from some other source . . . [and] that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Id.* at 158-159.

The Court even specifically clarified that "[w]hether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question. *Id.* at 163 *citing Holmberg v. Armbrecht,* 327 U. S. 392.

What makes Mr. Chinchilla's circumstance unique is not only did the Union completely fail Mr. Chinchilla through its inadequate representation, but after their failure to properly assist Mr. Chinchilla, they did not advise him of his options for appealing or vacating the arbitrator's decision. . Mr. Chinchilla was not aware of any deadlines because he had already waited for years. He had repeatedly been told to be patient and placed confidence in the fact that his Union would take care of him. However, this confidence and trust in the Union was for naught. Their treatment of Mr. Chinchilla was a result of extreme neglect, and while Mr. Chinchilla may have been wrong in waiting so long to appeal the arbitration, his decision was based on a consistent pattern and course of dealing with the Union that led him to believe was the appropriate custom and expectation with his case. With such a pattern of delays and slow communication and results it would be unfair to hold Mr. Chinchilla to a statute of limitations any shorter than the two years established for legal malpractice. He trusted the Union's judgment and waited as patiently as possible through years of the grievance and appeals process.

It is also the most analogous statute of limitations to the current issue before the Court. In Nevada, legal malpractice is premised upon an attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages. *Semenza v. Nevada Medical Liability Ins.*, 765 P. 2d 184, 185 - Nev: Supreme Court 1988. *See Warmbrodt v. Blanchard,* 100 Nev. 703, 706-707, 692 P.2d 1282, 1285 (1984). The Union meets all of these elements. It has a fiduciary relationship to its members as the sole bargaining agent with the employer, analogous to an attorney-client relationship. It breached that duty by failing to timely and adequately represent Mr. Chinchilla, which resulted in significant damages. The Union continues to attempt to distance and disassociate itself from Mr. Chinchilla. In the Union's motion to dismiss it asserts they were not "counsel for Mr.

Chinchilla," but instead represented the Union. (Co-Defendant, Culinary Workers' Union's Motion to Dismiss Pg. 7 fn. 5). They continue to fail to acknowledge the responsibilities that a duty of fair representation entails. At best, by pointing out the lack of an attorney-client relationship, and the responsibilities associated with such a relationship, the Union display's the attitude of half-hearted commitment to its members that Mr. Chinchilla was exposed to throughout his grievance and appeal process. While the relationship between an attorney and client may be somewhat different, it cannot be argued that the fiduciary relationship between a Union and its members is not analogous to an attorney-client relationship.

Additionally, the Defendant continually points to the *DelCostello* case as authority which refutes any argument regarding a statute of limitations other than the six-month timeline adopted in that particular case. It should be noted, that two of the Justices of the Court dissented in that opinion, and that one suggested that the claim for legal malpractice should be adopted to the facts in that particular case. *DelCostello*, 462 US at 173-174, Justice Stevens Dissenting. The opinion further clarified, "[w]e stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy." *Id.* at 171.

There have been other cases brought before the Supreme Court since the issuance of the *DelCostello* opinion where statute of limitations actions for labor union disputes were discussed, and a six-month period was **not** adopted. These cases demonstrate that the *DelCostello* analysis is not as well settled as the Defendant asserts. *See Electrical Workers v. Hechler*, 481 US 851 - Supreme Court 1987 (Where the Court disputed whether a civil claim for work related injury was governed by a hybrid section 301/Beach of fair duty of representation claim or strictly section 301, such an outcome could change the applicable statute of limitations, the Court refused to adopt the hybrid claim argued by the Union); *Reed v. Transportation Union*, 488 US 319 - Supreme Court 1989 (A Union member was not properly compensated and sued his Union, Court declined to adopt the six month statute of limitations argued under *DelCostello* theory.); *Teamsters v. Terry*, 494 US 558 - Supreme Court 1990. (The Court analyzed the Union members' damages and argued that the Union breached its fiduciary duty, analogous to a trustee over a trust, they did not adopt the *DelCostello* argument supplied by opposing counsel).

The standard elements of a cause of action for breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 2d 1153, 1169 (S.D. Cal. 2008). There is little doubt that the Union shared contractual, employment and fiduciary interests with Mr. Chinchilla as a result of his position as a shop steward and as a result of the general Union-employee representative relationship. The breach of this duty occurred when the Defendant Union failed to properly process Plaintiff's grievance, failed to timely bring the matter to arbitration, failed to challenge Bellagio's rejection of Mr. Chinchilla's second grievance, failed to adequately represent Mr. Chinchilla in his second arbitration proceeding, and failed to properly notify Mr. Chinchilla of his appeal options.

Again, the law is not as well settled as the Defendant seeks to assert in its argument to the court. Given the significant failure of the Union to adequately gather facts relevant to Mr. Chinchilla's case, the delays in pursing the grievance process, and the failure in advising Mr. Chinchilla of his appeal options all give credence to extending the statute of limitations is the two year period outlined in NRS 11.207. It is the law most analogous to the facts and circumstances surrounding this litigation. A denial of Defendant's motion to dismiss on the grounds of expiration of the statute of limitations is appropriate.

5. **The Defendant Has Improperly Attempted to Submit a Motion For Summary Judgment as a Motion to Dismiss, and the Motion Should be Determined Pursuant to the Standard Outlined in Rule 56.**

FRCP Rule 12(d) states, "[i]f, on a motion under Rule 12(b)(6) or 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The Defendant has submitted in its motion to dismiss hundreds of pages of exhibits, including: a collective bargaining agreement, prior correspondence between counsel, arbitration decisions, and deposition transcripts. None of these documents were originally presented in the complaint and as such were improperly submitted by the Defendant in a motion to dismiss.

The Court should either exclude the Defendant's inappropriate exhibits in deciding the motion to dismiss, or in the alternative convert the motion to dismiss to a motion for summary

judgment. Allowing the exhibits would convert the motion, thus requiring a new standard of review, and an opportunity for each party to supplement their motions with appropriate evidence, affidavits and documents.

## V.
## CONCLUSION

In conclusion, Defendant's Motion to Dismiss is premature and unjust. Furthermore, for the reasons stated above, Plaintiff's claims listed in its Complaint are meritorious and should be allowed to proceed on the merits. For these reasons the Plaintiff respectfully requests the Court deny the Motion to Dismiss in its entirety or in the alternative grant leave to amend and grant any further relief that the court may deem just and proper.

DATED this __10__ day of April, 2014.

Respectfully Submitted,

**KANG & ASSOCIATES**

/s/ Patrick W. Kang
**PATRICK W. KANG, ESQ.**
State Bar No. 010381
**KYLE R. TATUM, ESQ.**
State Bar No.: 013254
6480 W. Spring Mountain Rd., Ste. 1
Las Vegas, NV 89146
702.333.4223

*Attorneys for Plaintiff*

**CERTIFICATE OF MAILING**

I hereby certify that I am an employee of KANG & ASSOCIATES, PLLC., over the age of 18, neither a party to nor interested in this matter; that on this _10__ day, April 2014, I served a copy of **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**, as follows:

   __X___   by facsimile transmission, pursuant to NRCP(5)(b) and EDCR 7.26, to the following fax number:

   __X___   by mailing a copy thereof enclosed in a sealed envelope with postage prepaid in the United States Mail at Las Vegas, Nevada, to the counsel of record at the following address:

EDWIN A. KELLER, JR.
TIMOTHY W. ROEHRS
KAMER ZUCKER ABBOTT
3000 W. Charleston Blvd, Suite 3
Las Vegas, NV 89102-1990
P: 702.259.8640
F: 702.259.8646
*Attorneys for Defendant Bellagio*

                                                            /s/Su Branchini
                                                _____
                                                An Employee of KANG & ASSOCIATES

~ 17 ~